FILED & ENTERED

SEP 23 2015

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY zick          DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# NORTHERN DIVISION

| | |
|---|---|
| In re:<br><br>REGINALD ESCOBAR SILVA and<br>CARLITA MARIE SILVA,<br><br>                                    Debtors.<br>_____<br><br>CARLITA MARIE SILVA,<br><br>                                    Plaintiff,<br>v.<br><br>THE BOLLAG FAMILY TRUST, et al.,<br><br>                                    Defendants.<br>_____ | Case. No. 9:10-bk-14135-PC<br><br>Adversary No. 9:15-ap-01014-PC<br><br>Chapter 13<br><br>**MEMORANDUM REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S FIRST THROUGH SEVENTH CLAIMS FOR RELIEF**<br><br>Date:   September 10, 2015<br>Time:   10:00 a.m.<br>Place:  United States Bankruptcy Court<br>           Courtroom # 201<br>           1415 State Street<br>           Santa Barbara, CA  93101 |

At the above captioned date and time, the court considered the Defendants' Motion for Summary Judgment on Plaintiff's First Through Seventh Claims for Relief ("Motion") filed by Defendants, Michael Bollag, The Bollag Family Trust (collectively, the "Bollags") and MBB Properties, Inc. ("MBB").  Having considered the Motion, the response of the Plaintiff, Carlita Marie Silva ("Silva") in opposition thereto, the reply, and argument of counsel, the court will

grant the Motion as to Plaintiff's Fourth and Sixth Claims for Relief[1] based on the following

findings made pursuant to F.R.Civ.P. 56,[2] as incorporated into FRBP 7056.

## I. UNCONTROVERTED FACTS

The court adopts and incorporates herein by reference (1) the Statement of Facts

contained in its Memorandum Regarding Plaintiff's Motion for Preliminary Injunction [Dkt. #

18] filed in this adversary proceeding on March 9, 2015 and (2) Facts 1 through 16 set forth in

the Proposed Statement of Uncontroverted Facts and Conclusions of Law Re Motion for

Summary Judgment on Plaintiff's First Through Seventh Claims for Relief ("Statement of

Undisputed Facts") [Dkt. # 37] filed in this adversary proceeding on July 10, 2015.  Silva did not

file the separate statement of genuine issues required by LBR 7056-1(c)(2), and admits that she

"has no quarrel with the facts as determined by this court on March 9, 2015."[3]

## II. CONCLUSIONS OF LAW

This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§

157(b) and 1334(b).  This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (E), (H),

(K) and (O).  Venue is appropriate in this court.  28 U.S.C. § 1409(a).  To the extent that the

claims made the basis of Silva's complaint constitute "Stern claims,"[4] Silva, the Bollags and

MBB expressly consent to the entry of a final judgment by the bankruptcy court.[5]

---

[1]  At the hearing on September 10, 2015, the Bollags and MBB withdrew the Motion as to
Plaintiff's First, Second, Third, Fifth and Seventh Claims for Relief without prejudice to their
right to assert a summary judgment as to such claims at a later date.

[2]   Unless otherwise indicated, all "Code," "chapter" and "section" references are to the
Bankruptcy Code, 11 U.S.C. §§ 101-1330.  "Rule" references are to the Federal Rules of
Bankruptcy Procedure ("FRBP"), which make applicable certain Federal Rules of Civil
Procedure ("F.R.Civ.P.").  "LBR" references are to the Local Bankruptcy Rules of the United
States Bankruptcy Court for the Central District of California ("LBR").

[3]  Opposition to Summary Judgement Motion ("Opposition"), 1:24-25.

[4]  "These claims are called 'Stern claims,' so named after the Supreme Court's decision in Stern
v. Marshall, ___ U.S., ___, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011).  Stern claims are claims
'designated for final adjudication in the bankruptcy court as a statutory matter, but prohibited
from proceeding in that way as a constitutional matter.'"  Mastro v. Rigby, 764 F.3d 1090, 1093
(9th Cir. 2014) (citation omitted).

A. <u>Standard for Motion for Summary Judgment</u>

Rule 56(a) authorizes a party to "move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought." F.R.Civ.P. 56(a). Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." <u>Id.</u>  In determining whether a genuine factual issue exists, "a trial judge must bear in mind the actual quantum and quality of proof necessary to support liability . . . ." <u>Anderson v. Liberty Lobby, Inc.,</u> 477 U.S. 242, 254 (1986). "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial . . . . If the evidence is merely colorable, or is not significantly probative, . . . summary judgment may be granted.  <u>Id.</u> at 249–250.  However, the court's function on a motion for

---

[5] In her response, Silva now "contends that this court does not have jurisdiction to proceed with this summary judgment motion," arguing that this court's order entered on March 10, 2015, granting the Bollags and MBB relief from the automatic stay "effectively sent Silva's adverse possession claim, quiet title claim, claim for declaratory relief, and fraud claim to the state court."  Opposition, at 2:2-3. The court disagrees.  Silva invoked the jurisdiction of this court over the claims made the basis of this adversary proceeding and admitted in her amended complaint the following:

> 1.  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 157 and 1334, and the Standing Order of reference of the Chief Judge of the United States District Court for the Central District of California dated July 20, 1984. . . .

> 2.  This proceeding is a core proceeding.  It seeks to establish the validity, priority, or extent of lien or other interest in property and it seeks equitable relief., FRBP 7001.  <u>To the extent that this adversary proceeding is deemed a non-core proceeding, Plaintiff and Debtor consent to the entry of a final order and judgment by this Bankruptcy Court</u>."

Amended Complaint for Violation of the Automatic Stay 11 U.S.C. § 362; Turnover 11 U.S.C. § 544(a)(3); Turnover 11 U.S.C. § 549(c); Quiet Title; Adverse Possession; Fraud; Declaratory Relief; and Request for Preliminary Injunction ("Amended Complaint"), 2:3-10 (emphasis added).  The Order Granting Motion for Relief from the Automatic Stay Under 11 U.S.C. § 362 [Dkt. # 68] entered on March 10, 2015, in Silva's bankruptcy case did not divest this court of jurisdiction over Silva's Amended Complaint in this adversary proceeding.

summary judgment is "issue-finding, not issue-resolution.*" U,S, v. One Tintoretto Painting Entitled "The Holy Catholic Family With Saint Catherine and Honored Donor*, 691 F.2d 603, 606 (2d Cir. 1982).

Rule 56 does not permit "trial on affidavits. Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are [fact finder] functions . . .." Anderson, 477 U.S. at 255. Rule 56(c), which identifies the procedures the court and parties must follow in conjunction with motions for summary judgment, states:

> (1) **Supporting Factual Positions**. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
>> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>>
>> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> (2) **Objection That a Fact Is Not Supported by Admissible Evidence**. A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> (3) **Materials Not Cited**. The court need consider only the cited materials, but it may consider other materials in the record.
>
> (4) **Affidavits or Declarations**. An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

F.R.Civ.P. 56(c). The court may grant summary judgment "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)." See F.R.Civ.P. 56(e)(3).

The moving party has the burden of establishing the absence of a genuine issue of material fact. Celotex v. Catrett, 477 U.S. 317, 323 (1986). "Once the moving party carries its

initial burden, the adverse party 'may not rest upon the mere allegations or denials of the adverse party's pleading,' but must provide affidavits or other sources of evidence that 'set forth specific facts showing that there is a genuine issue for trial.' " Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001) (quoting former F.R.Civ.P. 56(e)); see Celotex, 477 U.S. at 323-24.

When the nonmoving party has the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325; see Fairbank v. Wunderman Cato Johnson, 212 F.3d 528, 532 (9th Cir. 2000) (stating that the Celotex showing can be made by "pointing out through argument-the absence of evidence to support plaintiff's claim"). If the nonmoving party fails to establish a triable issue "on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to judgment as a matter of law. Celotex, 477 U.S. at 323.

"If the court does not grant all the relief requested by the motion, it may enter an order stating that any material fact – including an item of damages or other relief – that is not genuinely in dispute and treating the fact as established in the case. F.R.Civ.P. 56(g). Furthermore, the court may, after notice and a reasonable opportunity to respond, grant summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute. F.R.Civ.P. 56(f)(3).

B.  Fourth Claim for Relief – Adverse Possession

In her Amended Complaint, Silva asserts that she became the true owner of the real property and improvements at 1100 North 3rd Street, Lompoc, California 93436 ("Lompoc Property") on August 10, 2014, by adverse possession pursuant to Cal. Civ. Code § 324 having continuously occupied the Lompoc Property and paid property taxes thereon since August 10, 2009.[6]

"Where it appears that there has been an actual continued occupation of land, under a claim of title, exclusive of any other right, but not founded upon a written instrument, judgment or decree, the land so actually occupied, and no other, is deemed to have been held adversely."

---

[6] Amended Complaint, at 5:8-6:9.

Cal. Code Civ. P. § 324. "To establish adverse possession, the claimant must prove: (1) possession under claim of right or color of title; (2) actual, open, and notorious occupation of the premises constituting reasonable notice to the true owner; (3) possession which is adverse and hostile to the true owner; (4) continuous possession for at least five years; and (5) payment of all taxes assessed against the property during the five-year period." <u>Mehdizadeh v. Mincer</u>, 46 Cal. App. 4th 1296, 1305 (1996); <u>see</u> Cal. Code Civ.P. § 325. "The burden is on the claimant to prove every essential element by clear and satisfactory evidence." <u>Weller v. Chavarria</u>, 233 Cal. App.2d 234, 242 (1965).

Section 325(b) of the California Code of Civil Procedure states:

> "In no case shall adverse possession be considered established under the provision of any section of this code, unless it shall be shown that the land has been occupied and claimed for the period of five years continuously, <u>and the party or persons, their predecessors and grantors, have timely paid all state, county, or municipal taxes that have been levied and assessed upon the land for the period of five years during which the land has been occupied and claimed. Payment of those taxes by the party or persons, their predecessors and grantors shall be established by certified records of the county tax collector.</u>"

Cal. Civ. Proc. Code § 325(b) (emphasis added). In her Motion for Preliminary Injunction, Silva asserted that the requisite five-year period of adverse possession commenced on September 1, 2009, not August 10, 2009, as alleged in the Amended Complaint, and that it expired on September 1, 2014 ("Adverse Possession Period").[7] Silva has the burden to show that she paid all taxes "levied and assessed" on the Lompoc Property during the period of possession -- September 1, 2009 to September 1, 2014.

"The county assessor must assess all property subject to general property taxation at its full value on January 1 of each year." <u>Cmty. Dev. Comm'n of City of Oxnard v. Cnty. of Ventura</u>, 152 Cal.App.4th 1470, 1476 (2007). "The word 'assessment' in [§ 325] refers to the act of the assessor" and "[t]he word 'levied' refers to the act of the board of supervisors or city

---

[7] Motion for Preliminary Injunction, 10:2-3 ("Her continued possession After [sic] September 1, 2009, was 'open and hostile' to the rights of movant because the parties relationship changed with the foreclosure sale.").

council." <u>Smith v. Byer</u>, 179 Cal.App.2d 118, 121 (1960). "A lien for the yearly assessment attaches to the property 'annually as of 12:01 a.m. on the first day of January preceding the fiscal year for which the taxes are levied.'" <u>Cmty. Dev. Comm'n of City of Oxnard</u>, 152 Cal.App.4th at 1476 (quoting Cal. Rev. & Tax. Code § 2192).

With respect to adverse possession, "all taxes levied and assessed during the period of possession must be paid even though more than five years is required." <u>Smith</u>, 179 Cal.App.2d at 120. "If occupancy and claim start at a time of year when payment of all taxes cannot be made in five years, then more than five years must elapse before title by adverse possession can be established." <u>Id.</u> at 120-121.

Based on a levy and assessment date of January 1 each year, the levied and assessed property taxes during the Adverse Possession Period in this case covered the years 2010, 2011, 2012, 2013, and 2014. Silva paid all of these taxes, <u>except the taxes for 2014</u>. The first installment of the 2014 tax came due on November 1, 2014 and was paid by MBB on October 17, 2014. The second installment of the 2014 tax came due on February 1, 2015, but was paid by MBB on October 20, 2014.[8]

Silva asserts that the applicable five-year period for the payment of taxes included 2009 and excluded 2014. However, the 2009 tax was assessed and levied on January 1, 2009, before commencement of the Adverse Possession Period on September 1, 2009. The 2009 tax was not assessed and levied during the Adverse Possession Period. The 2014 tax was, in fact, assessed and levied during the Adverse Possession Period. Silva's adverse possession claim hinged on payment of the 2014 tax installments. The fact that Cal. Code Civ.P. § 325(b) was amended in 2010 to add the word "timely" does not change this result.

Silva also asserts that the court's reliance on <u>Smith v. Byer</u> is error because, in Silva's view, the case was effectively overruled by <u>Gillard v. Hallam</u>, 30 Cal.3d 317 (1981), in which the California Supreme Court stated:

---

[8] A search on the County of Santa Barbara Treasurer and Tax Collector's web site confirmed MBB's payment of the 2014 taxes on the Subject Property.

"The burden is on the adverse claimant of the fee to establish that no taxes were assessed against the land or that if assessed he paid them."

Id. at 326.  Silva also points to Hagman v. Meher Mount Corp., 215 Cal.App.4th 82 (2013) in which the court concluded that because "no property taxes were assessed or levied on Meher Mount's property during the years it qualified for the welfare exemption[,] Hagman [was] not required to pay property taxes on the land under Code of Civil Procedure section 325, subdivision (b)."  Id. at 91.

In construing Code of Civil Procedure section 325, the Smith court stated that the "[t]he taxes a claimant must pay are those levied and assessed during the period of possession."  179 Cal.App.2d at 121.  This is construction is consistent with Gillard and Hagman.  Furthermore, Hagman can be distinguished on the facts because taxes were neither assessed or levied on the property in dispute due to the welfare exemption held by Meher Mount Corp.  In this case, taxes were, in fact, assessed on the Subject Property in each of the five years covered by the Adverse Possession Period and MBB, not Silva, paid the taxes assessed in 2014.

Because Silva has neither alleged nor demonstrated timely payment of the 2014 taxes on the Subject Property, the court will grant summary judgment to the Bollags and MBB on Silva's Fourth Claim for Relief for adverse possession.

C.  Sixth Claim for Relief – Fraud

The crux of Silva's fraud claim is that (1) the Bollags and MBB "knew . . . that [Silva] believed she was the owner of the [Lompoc Property];" (2) the Bollags and MBB "falsely and fraudulently and with the intent to deceive, by omission and inaction, induced [Silva] to preserve the [Lompoc Property] for their benefit; (3) as a result, Silva "was induced after August 10, 2009 to pay the first mortgage, taxes and insurance on the property, make repairs, and file for Chapter 13 relief to cure arrears on the first mortgage;" and (4) "[h]ad [Silva] known the truth, that she was not the owner of the property, she would not have preserved the property for the benefit of [the Bollags and MBB] for over five years."[9]  However, the following facts are undisputed:

---

[9] Amended Complaint, 6:25-7:9.

On September 9, 2009, after the Bollags purchased the Lompoc Property their representative, Todd Lyle ("Lyle"), personally informed Silva that they were the new owners of the property.

Silva did not believe Lyle.  Silva was in the process of trying to negotiate a loan modification with the first mortgage, which was the same entity that held the second mortgage at that time.  The person Silva was working with on the loan modification told her not to worry about what Lyle said.  Silva believed the loan modification representative when she told Silva that the Bollags did not own her house.

The Bollags did not immediately record their Trustee's Deed Upon Sale because they inadvertently thought that they were purchasing the Lompoc Property at a foreclosure sale conducted by the first trust deed holder, not the second.,  When they discovered their error, they were disinclined to become the record owners of the Lompoc Property because there was likely little or no equity in the Lompoc Property above what was owed to the first trust deed holder, and they didn't want to risk having their credit sullied by getting foreclosed out by the first trust deed holder.  So they decided not to become record holders, to allow Silva to live on the Lompoc Property without paying them any rent, and to see if the Lompoc Property increased in value over time to make it worthwhile for them to become record owners.

On October 16, 2014, the Bollags determined that there was at least some equity in the Lompoc Property to make it worthwhile to become record owners and to make payments to the first trust deed holder.[10]

In her response, Silva admits that Lyle told Silva that the Bollags bought the property, but argues that the Bollags and MBB, through Lyle, deceived her by not disclosing other pertinent information to her.  She points out that:

He does not provide any proof of that fact.  He leaves her without contact information.  He does not tell her the Bollags are "disinclined" to become record owners because there is little to no equity in the property.  He does not tell her that to protect their credit they are going to leave it to her to make the payments on the mortgage, taxes and insurance.  He does not tell her that when the Bollags think there is sufficient equity to make it worthwhile they will come back and take possession of the property.[11]

_____

[10] Statement of Uncontroverted Facts, 2:11-3:5.

[11]  Opposition, 5:5-11.

Silva concludes that "[t]his is classic fraud by omission of material facts."[12]  The court disagrees.

Under California law, the elements of an action for fraud and deceit based on concealment are:  "(1) the defendant must have concealed or suppressed a material fact; (2) the defendant must have been under a duty to disclose the fact to the plaintiff; (3) the defendant must have intentionally concealed or suppressed the fact with intent to defraud the plaintiff; (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of fact, the plaintiff must have sustained damage."  SCC Acquisitions, Inc. v. Cent. Pac. Bank, 207 Cal.App.4th 859, 864 (2012) (internal quotations and citations omitted).

"There are 'four circumstances in which nondisclosure or concealment may constitute actionable fraud:  (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant has exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts.'"  LiMandri v. Judkins, 52 Cal.App.4th 326, 336 (1997) (internal citations omitted).

Before the failure to disclose material facts can be actionable as fraud, the plaintiff must establish "*some relationship* between the parties which gives rise to a duty to disclose such known facts."  Id. at 337 (citation omitted); see L.A. Mem'l Coliseum Comm'n v. Insomniac, Inc., 233 Cal. App.4th 803, 831 (2015) ("To maintain a cause of action for fraud through nondisclosure or concealment of facts, there must be allegations demonstrating that the defendant was under a legal duty to disclose those facts.").  "As a matter of common sense, such a relationship can only come into being as a result of some sort of *transaction* between the parties."  LiMandri, 52 Cal.App.4th at 337 (emphasis in original).  For example, "a duty to disclose may arise from the relationship between seller and buyer, employer and prospective employee, doctor and patient, or parties entering into any kind of contractual agreement."  Id. "All of these relationships are created by transactions between parties from which a duty to

---

[12] Id. at 5:11.

disclose facts material to the transaction arises under certain circumstances." Id.; see L.A. Mem'l Coliseum Comm'n, 182 Cal.Rptr.3d at 832 ("The facts . . . show only a commercial relationship between Insomniac and Ventures, on the one hand, and plaintiffs, on the other hand, without more.  Because there is nothing alleged about that relationship that would give rise to fiduciary-like duties, plaintiffs have failed to state a claim against defendants for fraud by concealment.").

In this case, Silva has neither alleged nor provided significant probative evidence of an existing or anticipated contractual relationship or other relationship with the Bollags and MBB which would have given rise to a duty to disclose.  The only "transaction" underlying the Bollags and MBB's alleged nondisclosure of material facts is the conversation between Lyle and Silva on September 9, 2009, in which Lyle truthfully explained to Silva that the Bollags and MBB were the owners of the Lompoc Property.[13]  Silva chose to ignore Lyle's truthful statement and rely on the representations of an unidentified third party regarding ownership of the Lompoc Property.

Essentially, Silva contends that the Bollags and MBB had a duty to disclose to her their present or future intention to commit an intentional tort.  However, "one who intends to commit a tort [does not owe] a duty to disclose that intention to his or her intended victim."  LiMandri, 52 Cal.App.4th at 338 ("We are aware of no authority supporting the imposition of additional liability on an intentional tortfeasor for failing to disclose his or her tortious intent before committing a tort."); see, e.g., Bank of Am. Corp. v. Super. Ct., 198 Cal.App.4th 862, 872-72 ("[W]hile Countrywide had a duty to refrain from committing fraud, it had no independent duty to disclose to its borrowers its alleged intent to defraud its investors by selling them mortgage pools at inflated values."); Deteresa v. Am. Broad. Cos., 121 F.3d 460, 467-68 (9th Cir. 1997) ("[E]ven if the audiotaping and videotaping were wrongful under tort principles or a statute,

---

[13]  Not only was there no duty to disclose, there is no evidence that the Bollags or MBB had discovered on or before September 9, 2009, their error in purchasing the Lompoc Property at a foreclosure sale conducted by the first trust deed holder rather than the second, or that they had made the decision on or before September 9, 2009, not to become record owner of the Lompoc Property, to allow Silva to remain on the Lompoc Property rent free, and to wait to record their Trustee's Deed Upon Sale until the Lompoc Property increased in value to make it worthwhile to become the record owners of the property.

ABC is not liable for failing to disclose its intention to commit those wrongful acts."); <u>Porter v. Bank of Am., N.A.</u>, 2014 WL 1819396 (E.D. Cal. 2014) ("Defendants do not owe Plaintiffs a duty to disclose facts pertaining to their alleged mortgage scheme.").  Because the duty to disclose is an essential element of Silva's fraud claim against the Bollags and MBB which cannot be established at trial, the court will grant summary judgment to the Bollags and MBB on Silva's Sixth Claim for Relief for fraud.

CONCLUSION

For the reasons stated, the Motion filed by the Bollags and MBB will be granted as to Silva's Fourth and Sixth Claims for Relief.

A separate order will be entered consistent with this memorandum.

###

Date: September 23, 2015

Peter H. Carroll
United States Bankruptcy Judge